**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rilicia I. Leverenz, | No. CV-13-01468-PHX-NVW |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Rilicia I. Leverenz seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied her disability insurance benefits and supplemental security income under sections 216(i) and 223(d) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

   **A.     Factual Background**

Plaintiff was born in December 1976 and was 30 years old in May 2007 when her alleged disability began. She has an eighth grade education and has worked as a housekeeper, respite provider, and technician/assistant. She has chronic back pain, gets numbness in her legs, and has been diagnosed with migraine headaches and depression. In November 2007, Plaintiff had spinal fusion surgery for disc disruption at L5-S1. She

reports that prescribed medication helps relieve her back pain, Valium helps with her headaches, and she takes Paxil for depression.

### B. Procedural History

On October 28, 2009, Plaintiff applied for disability insurance benefits and supplemental security income, alleging disability beginning May 5, 2007. On January 17, 2012, she appeared with her attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On February 23, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On July 19, 2013, Plaintiff sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted); *accord Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

**III.   FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2012, and that she has not engaged in

- 3 -

substantial gainful activity since May 5, 2007.  At step two, the ALJ found that Plaintiff has the following severe impairments:  sacroiliac joint dysfunction, lumbar radiculopathy, lumbar neuropathic pain, peripheral neuropathy, obesity, recurrent major depression, and migraine headaches.  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with the following function-by-function limitations: occasionally climb ladders, ropes, and scaffolds; avoid exposure to hot temperature extremes; avoid exposure to humidity; and would be limited to occupations requiring no more than simple, routine, repetitive tasks.

The ALJ further found that Plaintiff is able to perform past relevant work as a housekeeper.

## IV.  ANALYSIS

### A.  The ALJ Did Not Err in Weighing Medical Source Opinion Evidence.

#### 1.  Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians:  (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results.  *Id.* at 832-33.  Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record.  *Id.* at 830; *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of

the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record).

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Lester*, 81 F.3d at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631. The ALJ may discount a physician's opinion that is based only the claimant's subjective complaints without objective evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The opinion of any physician, including that of a treating physician, need not be accepted "if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009). An ALJ may reject standardized, check-the-box forms that do not contain any explanation of the bases for conclusions. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The Commissioner is responsible for determining whether a claimant meets the statutory definition of disability and does not give significance to a

statement by a medical source that the claimant is "disabled" or "unable to work." 20 C.F.R. § 416.927(d).

Generally, more weight should be given to the opinion of a treating physician than to the opinions of physicians who do not treat the claimant, and the weight afforded a non-examining physician's opinion depends on the extent to which he provides supporting explanations for his opinions. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014).

### 2.   Treating Physician Brian Womack, D.O.

The ALJ gave a primary reason and a secondary reason for considering, but not relying on, the medical source statement by Plaintiff's primary care physician, Brian Womack, D.O. Regarding the secondary reason, the ALJ said Plaintiff "testified it has been well over a year since she last treated with Dr. Womack," and "the break in the relationship detracts from Dr. Womack's familiarity of the claimant's impairments and how they affect physical function." In January 2012, Plaintiff testified that she was regularly seeing a pain management specialist and a neurologist, but she had not seen Dr. Womack, her primary care physician, in almost a year. Plaintiff contends the ALJ erred because Dr. Womack saw Plaintiff one month and two months before he completed the questionnaire in May 2010. If the ALJ meant Dr. Womack had not seen Plaintiff for approximately a year before he completed the medical source statement and therefore was less familiar with Plaintiff's current level of functioning, the ALJ was incorrect.

If the ALJ meant that, at the time of the hearing in 2012, Dr. Womack had not recently treated Plaintiff for any condition related to his opinions, the ALJ was correct, but the consultative examinations were not any more current. It is true, however, that in the months before May 2010, Dr. Womack's treatment notes show no assessment or examination related to back pain, numbness, or migraines. Rather, he treated Plaintiff for flu, bronchitis, laryngitis, and smoking cessation, and he changed her depression medication because it was causing weight gain. But even if this secondary reason for not relying on Dr. Womack's statement was incorrect, the error is harmless because the

ALJ's primary reason for not relying on Dr. Womack's statement is factually correct, specific, and legitimate.

The ALJ's primary reason for not relying on Dr. Womack's statement was that it was "in the form of a 'check-off report' without clinical findings or narrative to support the limitations assessed." The ALJ's description of Dr. Womack's statement as a "check-off report' without any clinical findings or narrative to support the limitations assessed is accurate. Dr. Womack completed a standardized form by checking boxes and writing a few words in blanks. He checked "no" in response to whether Plaintiff could perform work eight hours a day, five days a week on a regular and consistent basis. He opined that Plaintiff's use of oxycodone caused moderate limitations. He also opined that Plaintiff's back pain and numbness in her legs moderately severely limited her ability to sustain work activity for eight hours a day, five days a week. He was asked: "Can the above noted limitation reasonably be expected to result from objective clinical or diagnostic findings which have been documented either by you, or elsewhere in Claimant's medical records?" Dr. Womack responded by checking "yes" and circling the word "elsewhere." In other words, he had not personally documented any findings to support his opinion, but he believed that such findings could be found elsewhere. On a separate assessment regarding mental functioning, Dr. Womack wrote, "Much of information regarding patient's chronic pain are [*sic*] at Dr. Tadlock (pain management), Dr. Shelton (neurology), Dr. Kabins (neurosurgery)." Dr. Womack did not indicate that he personally had ever made any diagnostic findings or assessed Plaintiff's functional limitations.

The ALJ did not err by rejecting Dr. Womack's statement on a standardized, check-the-box form that did not contain any explanation of the bases for his conclusions. *See Molina*, 674 F.3d at 1111.

### 3. Consulting Physicians and State Agency Physician

The ALJ stated that in assessing Plaintiff's residual functional capacity she considered and relied on the medical source statements by consultative examiners Dr.

Sarah Shepard and Dr. Mark Brecheisen and agency medical consultant Dr. Jean Goerss. These opinions contradicted that of treating physician Dr. Womack.

The ALJ said she relied on the opinions of Dr. Shepard and Dr. Brecheisen because they were based on objective clinical findings from personal physical examination of Plaintiff and because both examiners conducted a comprehensive examination to assess all aspects of physical function. Both doctors observed full range of motion in the shoulders, full motor strength, and symmetrical reflexes in all extremities. Dr. Shepard observed full range of motion in the cervical and lumbar spine. Dr. Brecheisen observed full range of motion in the cervical spine and some limitation in the lumbar region. Both doctors found straight leg raising in the seated position to be negative for reproducing low back pain; Dr. Shepard also tested in the supine position and found negative results. Finding no objective clinical evidence for Plaintiff's subjective complaints, both doctors opined that Plaintiff's conditions would not impose any limitations for twelve continuous months.

Plaintiff contends that the ALJ could not have fully relied on the opinions of the examining and non-examining physicians because they opined Plaintiff had no severe impairment whatsoever and yet the ALJ found several. In fact, Dr. Goerrs did recommend some limitations. Dr. Goerss found no evidence of migraines in the file and no objective basis for limitations for low back pain, but she recommended precautionary limitations because Plaintiff had had surgery to her lumbar spine and was therefore at a slightly increased risk of further damage to the spine. Dr. Goerss also recommended that Plaintiff avoid heat and humidity because obesity predisposes one to heat stroke and vibration because it aggravates back pain. The ALJ relied on Dr. Goerss' assessment because it cited specific evidence in support of her functional assessment even though Dr. Goerss did not personally examine Plaintiff.

Thus, the ALJ provided clear, convincing, specific, and legitimate reasons for giving greater weight to the opinions of Dr. Shepard, Dr. Brecheisen, and Dr. Goerss than to that of Dr. Womack.

**B.    The ALJ Did Not Err in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis:  (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (internal quotation marks and citation omitted).  But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors."  *Id.*

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms.  Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment.

During the ALJ hearing, Plaintiff testified that she can do dusting, light cleaning, and vacuuming, but after about 15 minutes she needs to sit down because of back pain. She said she can bathe and dress without assistance and lift 15–20 pounds.  She testified that she goes to the store once or twice a week.  Plaintiff testified she can walk about half an acre, but in her Function Report she said most of the time it hurt to walk due to hip pain.  Plaintiff testified that she can sit no more than an hour, but in her Function Report she reported watching television and reading a lot, using a computer three times per week, and playing video games five days per week for about two hours per day.

1       Plaintiff testified that she drives a truck with a stick shift, so when her legs go
2  numb she must put her foot on the clutch, "pop it into neutral and move out of the way of
3  the traffic" until the numbness goes away.  In her Function Report, Plaintiff said when
4  she goes out she drives or rides in a car, but "at times" she cannot drive.  She testified
5  that she gets numbness or pain in her legs, must sit down or she will fall, falls frequently,
6  but does not go to the emergency room when she falls because she does not remember
7  anything about it.

8       Plaintiff also testified that she had had headaches for 17 years or more, she gets
9  headaches two or three days a week, and the headaches last about two days.  But in her
10 Function Report she made only a passing reference to migraines and did not state that she
11 suffered from headaches with that frequency or duration.  In fact, it would be impossible
12 to play video games five days per week for about two hours per day if she had migraine
13 headaches most of every week.

14      Plaintiff further testified she has problems with memory and concentration, but in
15 her Function Report she said she had problems with attention and concentration only
16 when she was in bad pain.  She did not mention that she had any difficulty watching
17 television, using a computer, playing video games, paying bills or managing finances.

18      The ALJ stated that she found Plaintiff not fully credible because the severity of
19 her alleged shoulder, lower back, and lower extremity pain is not substantiated by
20 objective medical evidence; Plaintiff's statements were internally inconsistent; the
21 severity of her alleged migraine headaches was not fully credible; and Dr. Shepard
22 reported specific behavior that undermined Plaintiff's credibility.  Among the ALJ's
23 specific comments, the ALJ noted that Plaintiff alleged shoulder pain, but testified she
24 can vacuum.  The ALJ also noted specific evidence from two different observers that
25 Plaintiff moved without appearing to be in pain when she was distracted or believed she
26 was not being observed.

27      Substantial evidence supports finding that the ALJ provided clear and convincing
28 reasons for discrediting Plaintiff's subjective symptom testimony.  The ALJ did not reject

Plaintiff's subjective complaints based solely on a lack of corroborating objective medical evidence, but instead weighed inconsistencies between Plaintiff's testimony and her conduct and daily activities.

### C. The ALJ Did Not Err in Determining Plaintiff's Residual Functional Capacity Without Including Limitations Related to Plaintiff's Migraine Headaches.

A residual functional capacity finding involves a detailed assessment of how a claimant's medical impairments affect his ability to work. In determining a claimant's residual functional capacity, the ALJ "must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of all symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. SSA*, 466 F.3d 880, 883 (9th Cir. 2006). The ALJ must consider the combined effect of multiple conditions, including those that are not severe. *See* 20 C.F.R. § 404.1545(a)(2). A plaintiff's illnesses "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester v. Chater*, 81 F.3d 821, 829 (9th Cir. 1995).

The ALJ properly found that the severity of Plaintiff's alleged migraine headaches was not fully credible. Despite testimony regarding debilitating migraine headaches two or three days a week, each lasting about two days, with associated blurred vision and photophobia, Plaintiff did not seek consistent treatment or frequently report these headaches and symptoms to her medical providers. In her Function Report she mentioned "injuries and migraines," but said nothing about limitations due to migraines. In fact, she reported watching television and reading a lot, using a computer three times per week, playing video games five days per week for about two hours per day, and talking on the telephone "all the time." These reported activities directly contradict Plaintiff's testimony about the frequency and severity of her migraine headaches. Moreover, no objective evidence in the record supports finding that Plaintiff's residual functional capacity is limited by her migraine headaches.

- 11 -

Therefore, considering all relevant evidence in the record, the ALJ did not err by failing to include any limitation related to migraine headaches in the residual functional capacity assessment.

### D. The ALJ Did Not Err by Failing to Address Lay Witness Evidence.

Plaintiff contends that the ALJ committed legal error by failing to address the lay witness statement offered by Plaintiff's husband. The ALJ's hearing decision does not state that she rejected the lay witness statement; it does not mention it. If the ALJ rejected or discounted the statement, she was required to give reasons germane to the specific witness. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 693-94 (9th Cir. 2009).

If the ALJ erred by discounting the lay witness statement without stating reasons or by failing to consider the statement, Plaintiff bears the burden of proving the error was harmful. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* at 1115.

On November 21, 2009, Plaintiff's husband completed a third-party Function Report. Most of his responses closely parallel those of Plaintiff's on her Function Report, including that Plaintiff does some household chores, cooking, driving, and shopping. Plaintiff's husband agreed that she watches television, reads a lot, and talks on the phone a lot. Both said she either sleeps a lot or cannot sleep due to pain, and she can lift 10–15 pounds, perform all personal care activities, pay bills, and manage bank accounts. Plaintiff's husband does not offer any specific information that makes it more credible than Plaintiff's testimony.

To the extent that the third-party Function Report differs from Plaintiff's, it does not support as severe limitations as Plaintiff claims. Plaintiff reported that she had problems with attention and concentration only when she was in bad pain. Plaintiff's husband indicated she had no problem with concentration. In response to a question regarding how long Plaintiff can pay attention, her husband responded, "Endless."

Any error the ALJ may have committed by failing to explicitly consider the third-party Function Report is harmless because there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 8th day of October, 2014.

_____
Neil V. Wake
United States District Judge